RECEIVED

SEP 3 - 2015

AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. Kevin McNulty |
| | : | |
| | : | Criminal No. 15- 446 |
| v. | : | |
| | : | 18 U.S.C. §§ 1343 and 2; 15 |
| | : | U.S.C. §§ 78j(b) and 78ff(a); |
| NICHOLAS LATTANZIO | : | and 17 C.F.R. § 240.10b-5 |

## INDICTMENT

The Grand Jury, in and for the District of New Jersey, sitting at Newark,

charges:

## COUNTS ONE and TWO
### (Wire Fraud)

### BACKGROUND

1.      At all times relevant to this Indictment:

        a.      Defendant NICHOLAS LATTANZIO ("defendant LATTANZIO")

was a resident of Montclair, New Jersey.  LATTANZIO controlled and was the

principal of the Black Diamond Capital Appreciation Fund, L.P. ("BD Fund");

Black Diamond Investments, LP ("BD Investments"); and Black Diamond GP,

LLC ("BD GP") (collectively, the "Black Diamond Entities").

        b.      BD Fund was a Delaware limited partnership with its

principal place of business located in or around Montclair, New Jersey.  The

BD Fund claimed to be an investment entity that purportedly invested in highly

liquid fixed-income instruments using proprietary investment strategies.

        c.      BD Investments was a New Jersey limited partnership with

its principal place of business located in or around Montclair, New Jersey.  BD

Investments purported to be the investment advisor to the BD Fund.

      d.    BD GP was a New Jersey limited partnership with its principal place of business located in or around Montclair, New Jersey.  BD GP purported to be the general partner of the BD Fund.

      e.    "Company A" was a Delaware corporation with its principal place of business located in or around New York, New York.  Company A was engaged in the business of oil and gas operations, production, development and acquisitions.  Among other things, Company A invested in small, under-capitalized oil and gas reserves in the United States, and often sought various sources of financing to fund its acquisitions and development of such assets.

      f.    "Company B" was a Georgia limited liability company with its principal place of business located in or around Atlanta, Georgia.  Among other things, Company B was engaged in the business of developing hotels.

      g.    Company A and Company B are collectively referred to herein as the "Victim Companies."

<u>THE SCHEME TO DEFRAUD</u>

2.　　From at least as early as in or around June 2013 through in or around November 2014, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

NICHOLAS LATTANZIO,

knowingly and intentionally devised a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, and sounds, as more fully set forth below.

<u>OBJECT OF THE SCHEME</u>

3.　　The object of the scheme and artifice to defraud was for defendant LATTANZIO to enrich himself by misappropriating funds entrusted to him and the entities he controlled by the Victim Companies and using the funds for his personal benefit.

<u>MANNER AND MEANS OF THE SCHEME</u>

4.　　It was part of the scheme and artifice to defraud that defendant LATTANZIO or others acting at his direction solicited companies seeking financing, including the Victim Companies, and offered them access to large-scale financing through third-party entities.

3

5.     It was further part of the scheme and artifice to defraud that defendant LATTANZIO or others acting at his direction told the Victim Companies that as a prerequisite for funding, the Victim Companies had to invest with the BD Fund a percentage of the capital they were seeking.

6.     It was further part of the scheme and artifice to defraud that defendant LATTANZIO or others acting at his direction represented to the Victim Companies that they could withdraw their money from the BD Fund in the event that the financing was not obtained within a specified period of time.

7.     It was further part of the scheme and artifice to defraud that defendant LATTANZIO or others acting at his direction misrepresented the nature and performance record of the BD Fund, including the number of investors in the BD Fund and its assets under management, for the purpose of further inducing the Victim Companies to transfer money to defendant LATTANZIO and the Black Diamond Entities.

8.     It was further part of the scheme and artifice to defraud that defendant LATTANZIO converted millions of dollars in upfront fees and payments from the Victim Companies to his own use and otherwise used the funds in a manner that was inconsistent with the representations made to the Victim Companies.

9.     It was further part of the scheme and artifice to defraud that defendant LATTANZIO made various false excuses and other misrepresentations to the Victim Companies to conceal his misappropriation of

their funds and to continue to mislead the Victim Companies into believing that their money was securely invested with the BD Fund.

  10. To effect the object of the scheme and artifice to defraud, the following acts, among others, were taken:

  a. In or around October 2013, defendant LATTANZIO or others acting at his direction represented to Company A that he could arrange for a $20 million credit facility (the "Credit Facility") through a third-party company, but that Company A first had to deposit $2 million with the Black Diamond Entities.  Defendant LATTANZIO or others acting on his behalf then made numerous misrepresentations to Company A to induce it to transfer the funds to the Black Diamond Entities, including that:

  i. the Credit Facility was all but guaranteed;

  ii. the $2 million deposit would be invested with the Black Diamond Entities and would entitle Company A to a limited partnership interest in the BD Fund, a successful hedge fund managed by defendant LATTANZIO;

  iii. Company A would be one of many investors in the BD Fund, which had assets under management of approximately $100 million and an annual average return of approximately 18 % since 2008; and

  iv. if the Credit Facility (or an alternate facility) failed to close within 120 days, Company A could withdraw the $2 million deposit from the BD Fund.

5

b.     Based on the above material misrepresentations, among others, on or about December 20, 2013, Company A caused $2 million to be wired to the Black Diamond Entities in New Jersey.

c.     After receiving Company A's money, defendant LATTANZIO converted the majority of it to his own use or otherwise used the funds in a manner that was inconsistent with the representations made to Company A. For example, within days of receiving Company A's funds, defendant LATTANZIO wired approximately $124,000 to the bank account of a Land Rover dealership for the purpose of purchasing a luxury car. Defendant LATTANZIO also purchased a platinum and diamond ring for $102,185 from a luxury jewelry store in or around Hackensack, New Jersey. Defendant LATTANZIO also used the funds to pay his golf club membership dues and credit card bills.

d.     Likewise, in or around the spring or summer of 2014, defendant LATTANZIO or others acting on his behalf offered to arrange financing for Company B for one of its hotel construction projects. Defendant LATTANZIO advised Company B that the Black Diamond Entities would provide approximately $8.6 million in financing through an unidentified third-party lender. Defendant LATTANZIO further advised Company B that, in order to obtain this financing, it would first have to make an equity deposit with the BD Fund in the amount of approximately $1.95 million, and that if the financing did not come through within 90 days, Company B could immediately

6

withdraw its deposit with the BD Fund.

      e.    On or about August 21, 2014, based on the above material misrepresentations, among others, Company B caused approximately $1.95 million to be wired to an account for the BD Fund in New Jersey.  Contrary to his representations to Company B, however, defendant LATTANZIO immediately converted the funds to his own use.  For example, on or about the date the funds were received, defendant LATTANZIO caused approximately $1,048,956 to be wired to an escrow company in connection with his purchase of his home located in or around Montclair, New Jersey.

      11.    On or about the dates set forth below, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

NICHOLAS LATTANZIO,

knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the following writings, signs, signals, and sounds, each constituting a separate count of this Indictment:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 1 | June 24, 2014 | Email sent from defendant LATTANZIO to representative of Company A concerning Company A's right to withdraw its deposit from the BD Fund. |
| 2 | September 3, 2014 | Email sent from defendant LATTANZIO to representative of Company A concerning Company A's deposit with the BD Fund. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

8

## COUNT THREE
### (Securities Fraud)

1.      The allegations set forth in Paragraph 1 and Paragraphs 3 through
10 of Counts One and Two of this Indictment are hereby repeated, realleged,
and incorporated as if fully set forth herein.

2.      In or about December 2013, in Essex County, in the District of
New Jersey, and elsewhere, the defendant,

NICHOLAS LATTANZIO,

by use of the means and instrumentalities of interstate commerce, the mails,
and facilities of national securities exchanges, directly and indirectly,
knowingly and willfully used manipulative and deceptive devices and
contrivances in contravention of Title 17, Code of Federal Regulations, Section
240.10b-5, in connection with the purchases and sales of securities, to wit,
interests in the Black Diamond Capital Appreciation Fund, L.P., by (a)
employing devices, schemes and artifices to defraud; (b) making untrue
statements of material fact and omitting to state material facts necessary in
order to make the statements made, in the light of the circumstances under
which they were made, not misleading; and (c) engaging in acts, practices and
courses of business which operated and would operate as a fraud and deceit
upon persons, namely, Company A, a purchaser of a limited partnership
interest in the Black Diamond Capital Appreciation Fund, L.P.

        In violation of Title 15, United States Code, Sections 78j(b) and
78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18,
United States Code, Section 2.

## COUNT FOUR
### (Securities Fraud)

1.      The allegations set forth in Paragraph 1 and Paragraphs 3 through 10 of Counts One and Two of this Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

2.      In or about August 2014, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

NICHOLAS LATTANZIO,

by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, knowingly and willfully used manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, in connection with the purchases and sales of securities, to wit, securities purchased and managed by Black Diamond Investments, LLC, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, namely, Company B.

         In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

1.      The allegations contained in all paragraphs of Counts One through Four of this Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The United States hereby gives notice to the defendant charged in Counts One through Four of this Indictment that, upon conviction of the offenses charged in those counts, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343, alleged in Counts One and Two of this Indictment, and violations of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, alleged in Counts Three and Four of this Indictment, including but not limited to the following properties:

a.  all right, title, and interest, including all appurtenances and improvements thereon, in the real property known as 309 Upper Mountain Avenue, Montclair, New Jersey 07042; and

b.  various jewelry consisting of: (i) one platinum and diamond ring, bezel set with one round brilliant cut diamond weighing 1.07 carats, one round brilliant cut diamond weighing 1.08 carats, and one round brilliant cut diamond weighing 1.06 carats; (ii) one large, 18k white gold bangle bracelet with round brilliant cut diamonds, 1.65 carats total weight; and (iii) one rose-colored metal wrist cuff.

## **Substitute Assets Provision**

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third person;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be subdivided without difficulty;

then the United States of America will be entitled to forfeiture of substitute property up to the value of the property described above in paragraph 2, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____

Grand Jury Foreperson

*Paul J. Fishman/emc*

PAUL J. FISHMAN
UNITED STATES ATTORNEY

12

CASE NUMBER: 15-446 (KM)

# United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

### NICHOLAS LATTANZIO

## INDICTMENT FOR

18 U.S.C. §§ 1343 and 2, and 15 U.S.C. §§ 78J(b) and 78ff, and 17 C.F.R. § 240.10b-5

**A True Bill,**

_____
**Foreperson**

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

NICHOLAS P. GRIPPO
*ASSISTANT U.S. ATTORNEY*

(973) 645-2916
5116

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2015 SEP - 3   P 1: 52